UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------X
ALAN F. CAMPBELL,

             Plaintiff,                MEMORANDUM AND ORDER
                                           CV-02-3084

       -against-

LIBERTY TRANSFER CO.

             Defendant.
----------------------------X
A P P E A R A N C E S:

For Plaintiff:
    William Coudert Rand, Esq.
    711 Third Avenue, Suite 1505
    New York, New York 10017

For Defendant:
    Mintz & Fraade, P.C.
    488 Madison Avenue - Suite 1100
    New York, New York 10022
      By: Alan P. Fraade, Esq.
         Edward C. Kramer, Esq.

HURLEY, District Judge

      On June 18, 2004, the jury returned a verdict for $106,150.00 in favor of plaintiff Allen F. Campbell ("plaintiff" or "Campbell") against defendant Liberty Transfer Co. ("defendant" or "Liberty") on each of plaintiff's three causes of action, those being a claim under Uniform Commercial Code § 8-401, a claim for conversion, and one based on negligence.

      The purpose of this decision is to address outstanding motions made by defendant and plaintiff. Defendant identifies its motions as one "for summary judgment [as of] the conclusion of Plaintiff's case" and the other as a "post-trial

motion to set aside the jury's verdict." (Def.'s Mem. Supp. at
1.) These motions are deemed to be made pursuant to Fed. R. Civ.
P. 50(b) and will be treated as one post-verdict motion seeking
judgment as a matter of law on a number of different grounds.

Plaintiff, in his motion, requests (1) that judgment be
entered not only against defendant but also against non-party
Sara Sander ("Sander"), the purported sole owner of Liberty, and
(2) that prejudgment interest at the rate of 9% be included
within the judgment.

Defendant's motion will be addressed initially,
followed by plaintiff's.

DISCUSSION

Part I — Defendant's Motion

Plaintiff has advanced various arguments in opposing
defendant's motion. But his threshold argument, viz. that it is
untimely, is both correct and dispositive. As a result, the
parties' arguments unrelated to the timeliness issue will not be
addressed.

1.  Rule 50

Rule 50 provides in relevant part:

(a) Judgment as a Matter of Law.

(1) If during a trial by jury a party has
been fully heard on an issue and there is no
legally sufficient evidentiary basis for a
reasonable jury to find for that party on
that issue, the court may determine the issue

against that party and may grant a motion for
judgment as a matter of law against that
party with respect to a claim or defense that
cannot under the controlling law be
maintained or defeated without a favorable
finding on that issue.

  (2) Motions for judgment as a matter of
law may be made at any time before submission
of the case to the jury.  Such a motion shall
specify the judgment sought and the law and
the facts on which the moving party is
entitled to the judgment.

  (b) <u>Renewing Motion for Judgment After Trial;
Alternative Motion for New Trial</u>.  If, for
any reason, the court does not grant a motion
for judgment as a matter of law made at the
close of all the evidence, the court is
considered to have submitted the action to
the jury subject to the court's later
deciding the legal questions raised by the
motion.  <u>The movant may renew its request for
judgment as a matter of law by filing a
motion no later than 10 days after entry of
judgment</u> — and may alternatively request a
new trial or join a motion for a new trial
under Rule 59.[1]

Fed. R. Civ. P. 50(a) and 50(b)(emphasis added to last sentence

of text).

  A post-verdict motion for judgment as a matter of law

is governed by Rule 50(b), as is the renewal of an undecided

motion for the same relief made at the conclusion of plaintiff's

case-in-chief.  As explained <u>infra</u>, a district court is powerless

to entertain a Rule 50(b) motion on the merits unless (a) the

---

  [1] Defendant's motion seeks judgment as a matter of law; no
alternate request for a new trial has been made.

movant requested judgment as a matter of law when plaintiff
rested his direct case and again when all the evidence was before
the jury, and (b) the motion is made within 10 days of entry of
judgment.

2.   Defendant's Rule 50(a) Motions Made
     During the Course of the Trial

      At the conclusion of plaintiff's case-in-chief,
defendant moved for judgment as a matter of law on numerous
grounds which largely parallel those advanced in its current
motion.  (Trial Transcript ("Tr.") at 118-129; 139-140.)  The
Court reserved decision on that motion.

      The defense did not expressly move for judgment as a
matter of law at the conclusion of all the evidence.   In
plaintiff's view, that failure constitutes a "waive[r]" of
defendant's right to invoke Rule 50 in endeavoring "to set aside
the verdict . . . and vacate the judgment."  (Pl.'s Mem. Opp'n at
5-6.)  While the making of such a motion is necessary to preserve
the issue for post-verdict consideration (9A Wright and Miller,
Federal Practice and Procedure: Civil 2d § 2537 at 335-36),
defendant, during the charge conference, reiterated a number of
the arguments earlier voiced concerning the claimed insufficiency
of plaintiff's proof and defendant's right to judgment as a
matter of law.  Accordingly, the Court will treat that charge
conference colloquy as a motion for judgment as a matter of law

-4-

made at the conclusion of all of the evidence.  <u>See, e.g.</u>,
<u>Greenwood v. Societe Francaise De</u>, 111 F.3d 1239, 1244-45 (5th
Cir. 1997); <u>Scottish Heritage Trust, PLC v. Peat Marwick Main &
Co.</u>, 81 F.3d 606, 610-11 (5th Cir. 1996); <u>Pro Football Weekly,
Inc. v. Gannett Co., Inc.</u>, 988 F.2d 723, 725-26 (7th Cir. 1993);
<u>see generally</u>, 9A Wright & Miller, <u>Federal Practice and
Procedure</u>: <u>Civil 2d</u> § 2537 at 336-39 ("Because [the need to make
a Rule 50(a) motion at the conclusion of all the evidence] is a
potential trap for the unwary, the federal courts fortunately
take a liberal view of what constitutes a motion for judgment as
a matter of law at the close of all the evidence in deciding
whether there was a sufficient prerequisite for the later
motion.").

   Although defendant made the required Rule 50(a) trial
motions, it neglected to renew those motions within 10 days of
the entry of judgment as required by Rule 50(b).

3.   <u>Defendant's Rule 50(b) Motion is Untimely</u>

   After the jury returned its verdict on June 18, 2004,
no oral or written Rule 50(b) motion was made by defendant.  (Tr.
at 274.)  Later that same day, judgment was entered in keeping
with this Court's standard practice and the requirements of Fed.
R. Civ. P. 58(a)(2)(i).[2]

---

   [2]  Fed. R. Civ. P. 58(a)(2)(i) provides that "unless the
court orders otherwise, the clerk must, without waiting the

Several weeks thereafter, a briefing schedule was
established for any post trial motions even though the defendant
had not yet moved for judgment as a matter of law pursuant to
Rule 50(b). That schedule was later extended by Memorandum and
Order dated August 12, 2004. Consistent with the revised
briefing schedule, defendant's Rule 50(b) motion was not filed
until mid-November 2004. Clearly, the 10 day period had long
since run its course by then unless, as defendant contends, the
judgment should not have been filed in the first place. Before
discussing defendant's arguments as to why that is supposedly so,
attention will be focused on the legal effect of an untimely Rule
50(b) motion.

4.   Rule 50(b)'s 10 Day Time Limitation is Jurisdictional
     and May Not be Modified by the Court

It is well established that the time limitation set
forth in Rule 50(b) is jurisdictional. See Rodick v. City of
Schenectady, 1 F.3d 1341, 1346 (2d Cir. 1993)("Fed. R. Civ. P.
50(b) . . . requires that a motion for judgment as a matter of
law be made 'not later than 10 days after entry of judgment.'
Fed. R. Civ. P. 6(b) makes [the] 10 day time limitations
jurisdictional so that the failure to make a timely motion
divests the district court of power to modify the trial

court's direction, promptly prepare, sign, and enter judgment
when . . . the jury returns a general verdict."

verdict."); <u>Fruit of the Loom Inc. v. American Mktg. Enters.</u>, No. 97 Civ. 3510, 1999 WL 527989, *1 (S.D.N.Y. July 22, 1999); <u>see generally</u>, 9A Wright and Miller, <u>Federal Practice and Procedure</u>: <u>Civil 2d</u>, Section 2537 at 350-52 ("[T]he time period prescribed by the rule cannot be enlarged, either by the court or by stipulation of the parties, and an untimely motion cannot be considered by the district judge.").

5.   <u>Defendant's Position</u>

　　　　Plaintiff raised the Rule 50(b) jurisdictional issue as Point I in his Memorandum in Opposition to the relief currently sought by defendant.  But absent from defendant's Reply Brief, or elsewhere in its motion papers, is any mention of this pivotal subject.

　　　　However, reference to defendant's papers submitted in opposition to the plaintiff's post-verdict motion partially fills the void.  Therein, defendant succinctly speaks of plaintiff's request as being "premature" given "issues . . . not yet . . . fully adjudicated."  (Def.'s Mem. Opp'n at 1-2.)  That same argument, in considerably more expansive form, is found in a letter dated July 8, 2004, which defendant sent to Court shortly after Rule 50(b)'s 10 day period had expired.

　　　　In that letter, defendant objected to the entry of judgment based on "several issues left unresolved."  Those issues were identified thusly:

-7-

The first issue was our motion for
judgment at the conclusion of Plaintiff's
case, on which the Court reserved decision.
The next issues were the multitude of legal
and factual issues with respect to Rule 144,
to which all parties agreed, stipulated and
consented would not go to the jury, but would
remain with the Court to decide in the event
of a Plaintiff's verdict. These issues
generally deal with whether or not the
Plaintiff could have legally sold shares
under Rule 144, and complied with such legal
requirements, at the time he alleges damages
accrued, and whether or not the Defendant
could have issued free trading shares under
Rule 144 without undue exposure to violations
of the Securities Laws.

There are also the post trial issues
regarding the verdict itself and whether or
not it was contrary to the weight of the
evidence. As well, there was the issue of
whether or not Plaintiff set forth a prima
facie case on damages, considering there was
no expert testimony and no evidence of
sufficient volume to sell the shares at the
price claimed during the time Plaintiff
claims he would have sold the shares, as well
as the effect on price of dumping shares in a
thinly traded securities market.

(July 8, 2004 Letter from Edward J. Kramer, Esq. to Court at 1-

2.)[3]

The Court assumes — based on defendant's response to

_____

[3]  Defendant's July 8, 2004 letter concludes with an
untimely request that the judgment be vacated. Over the
objection of plaintiff and in then unknowing contravention of
established law, see Johnson v. New York, New Haven and Hartford
R.R. Co., 344 U.S. 48, 50-54 (1952) (discussed infra), the Court,
by Memorandum and Order dated August 12, 2004, directed the Clerk
of Court to vacate the June 18th judgment on the basis that
defendant's motion made at the end of plaintiff's case-in-chief
remained unresolved.

plaintiff's motion and the July 8th letter — that it is
defendant's position that the time to file a Rule 50(b) motion
never started to run, or was somehow tolled, because (1) the
Court reserved decision on the Rule 50(a) motion made at the
conclusion of plaintiff's case-in-chief, and (2) there were
other "unresolved" issues as detailed in defendant's letter.
Accordingly, each of the arguments detailed in the July 8th
letter will be discussed seriatim.

6.   Significance of Court Reserving Decision on
     Defendant's Rule 50(a) Motion at Conclusion of
     Plaintiff's Case-in-Chief

        Judgment was entered as a matter of course following
receipt of the jury's verdict.  Defendant was required to renew
the motion made at the conclusion of plaintiff's case-in-chief
within the prescribed period for the motion to remain viable.
Its failure to do so renders this Court unable to entertain the
current Rule 50(b) motion on the merits.  See, e.g., Johnson, 344
U.S. at 50-54;  see also 9A Wright & Miller, Federal Practice and
Procedure: Civil 2d § 2537 at 355 ("Judgment cannot be had as a
matter of law, either after verdict or after a jury disagreement,
in the absence of a motion for judgment.  The motion must be made
even though the trial court expressly has reserved decision on
the motion at the close of the evidence.  This is the teaching of
the much criticized case of Johnson v. New York, New Haven &

<u>Hartford Railroad Company</u>, [344 U.S. 48 (1952)]").[4]

7.   <u>Legal and Factual Issues Purportedly to be Decided by Court</u>

The next issue identified by defendant in its July 8, 2004 letter as warranting a vacatur of the June 18, 2004 judgment — and presumably intended to be advanced in seeking to overcome plaintiff's Rule 50(b) jurisdictional argument — relates to the "multitude of legal and factual issues with respect to Rule 144[5] to which all parties agreed, stipulated and consented would not go to the jury but would remain with the Court to decide in the event of a Plaintiff's verdict." (July 8, 2004 Letter from Edward J. Kramer, Esq. to Court, at 1.) The claimed "agreement of the parties and the Court [was supposedly reached] prior to the commencement of the trial." (Def.'s Post Trial Br. at 1.)

With respect to defendant's understanding, plaintiff responds that there "does not appear to be any evidence of such an agreement in the record and Plaintiff's counsel does not

_____

[4]   Parenthetically, neither the Court's issuance of a briefing schedule for post trial motions on July 2, 2004, nor its August 12, 2004 Order vacating the June 18, 2004 judgment based on defendant's belated application for such relief, alters Rule 50(b)'s time frame. <u>See, e.g.</u>, <u>Weissman</u>, 214 F.3d at 230 (2d Cir. 2000)("[E]ven if the district court extended the time in which the movant could make the motion, any reliance on that extension 'is flawed . . . because it fails to recognize that the Rule 50(b) and 59 time limitations are jurisdictional and that excuses are therefore unavailing.'" (quoting <u>Rodick v. City of Schenectady</u>, 1 F.3d 1341, 1347 (2d Cir. 1993)).

[5]   Rule 144 is found at 17 C.F.R. § 230.144.

-10-

recall any such agreement." (Pl.'s Mem. Opp'n at 6.) My
recollection, confirmed by a perusal of the record, dovetails
with that of plaintiff's counsel.

In response to plaintiff's disavowal of the claimed
pretrial agreement, defendant simply once again refers to "the
Rule 144 issues reserved to the Court" absent a supporting
reference to the trial transcript or other writing, or the date,
location and other attendant circumstances giving rise to the
stipulation if it is claimed to be outside the record. (Def.'s
Reply at 1.) Under the circumstances, the Court concludes that
defense counsel's recollection is faulty and no such <u>pretrial</u>
agreement was ever reached.

There was, however, a charge conference agreement
relating to Rule 144, and defendant is thus off-target on the
timing of the agreement as distinct from its existence.

By way of background, the jury had been presented with
considerable evidence (primarily from Campbell and Liberty's
manager, Conger), plus argument (from both attorneys) about Rule
144. Questions arose during the charge conference about the
level of detail that should be included in the Court's
instruction and what issues, if any, were for the Court to decide
as issues of law. (<u>See</u> Tr. at pp. 176-201.)

Ultimately it was agreed that the Court's proposed
charge, subject to some exceptions not relevant for present

purposes, would be given based on the understanding reflected in the following excerpt from the trial transcript:

> THE COURT: Any other requests to charge that were voiced [i.e. those pertaining primarily to Rule 144], as I understand it, have been withdrawn in the sense that they will not be included within the charge on consent. However, to the extent they involve some legal issue, or some issue that would affect the validity of the ultimate verdict, each attorney retains the right to assert that ground consistent with the law by way of post-verdict motions. So let me check with Mr. Rand. Is that an accurate statement?
>
> MR. RAND: Yes, your Honor. This is an accurate statement.
>
> THE COURT: All right. Mr. Kramer.
>
> MR. KRAMER: An accurate statement except we wanted the jury to specifically be considering the volume of transactions at the time.
>
> THE COURT: All right. I know you discussed this with [one of the Court's law clerks]. But that is not in the proposed – in the actual charge.
>
> MR. KRAMER: This is our objection to the actual charge.

. . . .

| | |
|---|---|
| THE COURT: | That's reserved for a post-verdict motion. |
| MR. KRAMER: | Yes. |
| THE COURT: | Very good.  All right so then we're ready for the jury. |
| MR. KRAMER: | Yes, sir. |

(<u>Id.</u> at 203-04.)

Presumably the above is the agreement referenced by defendant, albeit occurring at a different stage of the proceedings.  Assuming that is so, the next question is whether that agreement is subject to Rule 50(b)'s 10 day provision.

As noted, defense counsel has identified the subject of the agreement as being "the Rule 144 issues reserved to the Court."  (Def.'s Reply at 1.)  In his view, "[t]he particular issues on 144 . . . are all legal issues not really appropriate for a jury."[6]  (Tr. at 192.)  In essence, the Court is currently being asked to grant defendant judgment as a matter of law on the ground that it, as the transfer agent for Panther Mountain Water Park, Inc., had a reasonable ground for refusing to record the stock sales made by Campbell in May of 1999 and that no reasonable jury could conclude to the contrary.

---

[6]  The above statement by defense counsel regarding Rule 144 "legal issues" is inconsistent with the inaccurate statement in Liberty's July 8th letter that the understanding between the parties and the Court embraced both legal and factual issues.

That same ground was included in defendant's Rule 50(a) motion made at the conclusion of plaintiff's case-in-chief. But whereas the Court reserved decision on that Rule 50(a) motion, decision was <u>not</u> reserved under the charge conference agreement. Instead, the Court's and parties' understanding was that for grounds that "would affect the validity of the ultimate verdict," "each attorney retain[ed] the right to assert that ground consistent with the law by way of post-verdict motions." (Tr. at 204.) Post-verdict motions of the genre under discussions are governed by Rule 50.

Just as defendant was required under subdivision (b) of that Rule to move within 10 days of entry of judgment to preserve its arguments made at the conclusion of plaintiff's case-in-chief, it had to act within the same period with respect to the issues covered by the charge conference agreement as per the agreement's reference to post-verdict motions. Which is to say, this second of defendant's three "unresolved" issues, is also insufficient to render its Rule 50(b) motion timely.

8.  Remaining Issue Referenced in Defendant's
    July 8, 2004 Letter

Relatively short shift may be made of this third, and final ground. Included within this ground are a series of "post trial issues regarding the verdict itself[,] whether or not it was contrary to the evidence . . . . [and] whether or not

-14-

Plaintiff set forth a prima facie case on damages." (July 8, 2004 Letter from Edward J. Kramer, Esq. to Court at 1.)

As explained earlier, such issues may not be pursued unless, inter alia, the appropriate Rule 50(b) motion is made in a timely fashion. Otherwise, as is the case here, this Court lacks jurisdiction to entertain the relief sought.

### CONCLUSION RE PART I

Judgment was entered on June 18, 2004. Rule 50(b)'s 10 day period had expired before defendant either filed the July 8th letter or its post-verdict motion for judgment as a matter of law unless the running of the period did not commence or was tolled. But nothing in defendant's motion papers, including its Reply Brief, or its July 8th letter, suggests no less establishes either to be the case. Under these circumstances, the Court is constrained to conclude that it is without jurisdiction to consider defendant's claims on the merits.

For the reasons indicated, defendant's Rule 50(b) post judgment motion is denied.

### PART II — PLAINTIFF'S MOTION

Plaintiff has moved "for an Order, pursuant to, inter alia, Fed. R. Civ. P. 58, entering judgment, joint and severally, against Liberty Transfer Co. and against "Sara Sander" ["Sander"] its owner and sole proprietor, in the amount of $106,150.00 plus pre-judgment interest at the rate of 9% per annum commencing on

May 19, 1999 . . . ." (Pl.'s Sept. 1, 2004 Notice of Mot. at 1-
2.)[7]

1.    Request That Judgment be Entered Against
      Defendant Liberty and Non-Defendant Sander

        The bases proffered by plaintiff for this item of
relief is threefold: (1) defendant stipulated pretrial that
Liberty "is [a] sole proprietorship," (Pl.'s Reply at 3
(referencing the Stipulated Facts portion of Joint Pre-Trial
Order, at 4, ¶ 2)), (2) "Conger [, the manager of Liberty,]
testified that . . . Sander was the owner and sole proprietor of
. . . Liberty." (id. at 2), and (3) "the court's jurisdiction
over a sole proprietorship also entitles the Court to personal
jurisdiction over the owner of the sole proprietorship because
the law does not recognize a sole proprietorship as a separate
legal entity from its owner," (id.).

        Defendant's response is as follows:

        At the onset of trial, the Court had reserved
        unto itself several issues of law and fact.

_____

        [7] Judgment was entered on June 18, 2004.  Plaintiff's
initial motion to amend that judgment, made pursuant to Fed. R.
Civ. P. 59, was filed on June 28, 2004.  Accordingly, that
motion, unlike defendant's Rule 50(b) application, was timely and
may thus be addressed on the merits.  See Fed. R. Civ. P. 6(a).

        Plaintiff was required to refile that motion — which he
did on September 1, 2004 — due to the Order of this Court dated
August 12, 2004, which erroneously vacated the June 18, 2004
judgment and dismissed plaintiff's motion, without prejudice, as
premature.  That Order, as discussed in the text supra, exceeded
the Court's jurisdiction.

-16-

These issues were not presented to the jury
for determination and, consequently, a
determination on these matters was not
incorporated into the verdict filed on July
[sic; should read June] 18, 2004.  As the
Court has yet to render a decision on these
matters, these issues have not yet been fully
adjudicated.  Therefore, Plaintiff's motion
for entry of judgment at this juncture
against Defendant and Sara Sander, who is not
included as a defendant in the caption of
this action, is premature.

(Def.'s Mem. Opp'n at 1-2.)

a)    <u>Entry of Judgment</u>

For the same reasons articulated by the Court in Part

I, defendant's renewed reliance on the concept of prematurity in

the present context is rejected.  Accordingly, plaintiff is

entitled to have the judgment against Liberty re-entered.

b)    Sander May Not Properly be
<u>Added as a Judgment Debtor</u>

The caption in this case lists one plaintiff, Campbell,

and one defendant, Liberty.  That caption has remained unaltered

through to the entry of judgment on June 16, 2004.  In

endeavoring to interject non-party Sander into the proceeding

post-verdict, plaintiff correctly notes that "the owner of the

full proprietorship is personally liable for the debts for the

sole proprietorship," citing such cases as <u>Latham Sparrowbush

Assocs. v. Shaker Estate</u>, 153 A.D.2d 788 (3d Dep't 1989); <u>Yellow

Book of NY L.P. v. Dimilia</u>, 188 Misc.2d 489 (N.Y. Dist. Ct.

Nassau County 2001); <u>Williams v. Gleason</u>, 1980 WL 102282 (Sup.

-17-

Ct. Albany County Aug. 13, 1979); and <u>Vallejo v. Webb</u>, No. 82 Civ. 4825, 1985 WL 234 (S.D.N.Y. Jan. 29, 1985). That the owner of the sole proprietorship may be called upon to answer for its debts does not eliminate the need for the purported owner[8] to be served with Notice and provided with an opportunity to be heard before being directed by a court to make payment. Significantly, but not surprisingly, reference to each of the cases cited by the plaintiff indicates that the individual implicitly said to be Sander's counterpart for jurisdictional purposes was a <u>named defendant in the action</u>, unlike Sander. Simply put, this Court lacks in personam jurisdiction over Sander.

In sum, plaintiff's application to have Sander listed as a judgment debtor is denied.

2.    Plaintiff's Request for Prejudgment Interest at the
      Rate of 9% Per Annum Commencing on May 19, 1999

The parties are in federal court based on diversity jurisdiction. (First Amended Compl. ¶ 3.) "Since federal jurisdiction in this case is premised on diversity and the right to interest on a cause of action qualifies as a substantive

---

[8] For the proposition that Sander was the owner of Liberty during the time plaintiff's causes of action accrued, plaintiff cites the testimony of Conger. Conger testified that she "run[s] the business for the owners" and then identified the owner as "Sara Sander." (Tr. 42-43.) She was not asked, and accordingly did not indicate, whether Sander was the owner during the period relevant to plaintiff's claims, as distinct from being the owner as of the time the witnesses testified, to wit in June of 2004.

right, we must look to New York law." <u>Adams v. Lindblad Travel,</u>
<u>Inc.</u>, 730 F.2d 89, 93 (2d Cir. 1984).  In keeping with that
directive, plaintiff cites N.Y. CPLR 5001 and 5004 in seeking
interest as per New York law.

CPLR 5001 provides in pertinent part:

(a) Actions in which recoverable.  Interest
shall be recovered upon a sum awarded because
of a breach of performance of a contract, or
because of an act or omission depriving or
otherwise interfering with title to, or
possession or enjoyment of, property. . . .

(b) Date from which computed.  Interest
shall be computed from the earliest
ascertainable date the cause of action
existed, except that interest upon damages
incurred thereafter shall be computed from
the date incurred.  Where such damages were
incurred at various times, interest shall be
computed upon each item from the date it was
incurred or upon all of the damages from a
single reasonable intermediate date.

(c) Specifying date; computing interest.
The date from which interest is to be
computed shall be specified in the verdict,
report or decision.  If a jury is discharged
without specifying the date, the court upon
motion shall fix the date, except that where
the date is certain and not in dispute, the
date may be fixed by the clerk of the court
upon affidavit.  The amount of interest shall
be computed by the clerk of the court, to the
date the verdict was rendered or the report
or decision was made, and included in the
total sum awarded.

CPLR 5004 indicates that "[i]nterest shall be at the
rate of nine per centum per annum, except where otherwise
provided by statute."

In response to plaintiff's application for prejudgment interest, defendant contends that "plaintiff has not offered any explanation for its arbitrary designation of nine percent (9%) as the prejudgment interest rate," (Def.'s Mem. Opp'n at 3), seemingly choosing to ignore opposing counsel's short, but certainly understandable argument on the interest issue. (<u>See</u> Pl.'s Mem. Supp. at 3, including the reference to <u>Oy Saimaa Lines Logistics, Ltd. v. Mozaica-New York, Inc</u>, 193 F.R.D. 87 (E.D.N.Y. 2000).) Beyond that, however, defendant has not addressed plaintiff's position that New York substantive law applies, and that New York would apply its own law, including CPLR 5001 and 5004, in determining the plaintiff's entitlement to prejudgment interest.

Instead, defendant cites a series of federal cases in which federal law, including 18 U.S.C. § 1961, was applied in determining whether prejudgment interest should be awarded and, if so, in what amount. No effort is made, however, to explain why one or more of those cases provide a governing standard for present purposes. And no reason is apparent to the Court given that none of the cited cases — unlike those relied upon by plaintiff — are predicated on diversity jurisdiction.

Having reflected on the respective arguments of counsel, the Court concludes that §§ 5001 and 5004 are applicable to plaintiff's request for prejudgment interest. CPLR 5001(a)

provides that prejudgment interest "shall" be awarded for a qualifying cause of action. Plaintiff recovered on three causes of action, one of which, conversion, clearly may be legitimately so characterized. See Eighteen Holding Corp. v. Drizin, 268 A.D.2d 371 (1st Dep't 2000)(awarding prejudgment interest on conversion claim). CPLR 5004 sets the rate of interest at 9% per annum.

The jury was not asked to determine the starting date for the running of interest. As a result, the obligation "to fix the date" rests with the Court. CPLR 5001(c). Plaintiff has requested the date of May 19, 2004, that being the claimed date plaintiff "was first improperly prohibited from transferring his shares."[7] (Pl.'s Mem. Supp. at 4.) Defendant has remained silent on the subject.

In finding for plaintiff on his conversion claim, the jury necessarily found that defendant wrongfully affixed a restrictive legend on plaintiff's stock certificate and refused to record the transfer of shares sold by plaintiff. Both of those events apparently occurred on May 25, 1999. (See Trial Ex. B (Uniform Rejection Notice dated May 25, 1999, referring to a "Stop on Certificate # 6115 [i.e., plaintiff's share certificate;

---

[7] Reference to Trial Exhibit C, cited by plaintiff, does not support the proposition that defendant refused on May 19, 2004 to record a stock transfer reflecting a sale made by plaintiff.

<u>see</u> Trial Ex. A]" as representing "Restricted Shares"); <u>see also</u> Tr. at 89-90.)  Therefore, it seems that the first refusal by defendant occurred on May 25th, not May 19th.

As "the earliest ascertainable date the cause of action existed," May 25, 1999 is the appropriate date for the commencement of interest to the extent that damages were incurred on that date.  However, the amount of damages incurred as of May 25th cannot be gleaned from the record.  To place the problem in context, some additional background information is required.

Plaintiff intended to market his entire interest in Panther Mountain Water Park, consisting of 575,000 shares, "over the period of a couple months."  (Tr. at 60.)  Pursuant to that plan, plaintiff testified he sold "155,000 shares from . . . May 18th to June 2[nd]."  (<u>Id.</u> at 59.)  We know from Trial Exhibit B that defendant refused on May 25, 1999 to transfer some unspecified number of those 155,000 shares.  That the refusal did not pertain to <u>all</u> of the shares is implicit in plaintiff's testimony that the initial sales period extended to June 2nd. Rather than engage in guesswork in an effort to determine how many of the 155,000 shares defendant refused to acknowledge for transfer purposes on May 25, 1999, the procedure, explained <u>infra</u>, will be used to select "a reasonable intermediate date" (CPLR 5001(b)) which will be the commencement date for the computation of interest.

Defendant sold slightly in excess of 25% of his 575,000 shares between May 18th and June 2, 1999, i.e., 15 days. If he sold his remaining shares at the same rate, his entire holding would have been liquidated, and the concomitant "damages incurred" by about July 17, 1999 which, incidently, dovetails time-wise with plaintiff's marketing plan. CPLR 5001(b). The Court concludes that a reasonable intermediate date between May 18th and July 17 1999 is June 17, 1999. Accordingly, that will be the date from which interest will be computed.

In sum, plaintiff is awarded prejudgment interest at 9% measured from June 15, 1999 up to the date that both the verdict was returned and the judgment initially entered, to wit, June 18, 2004. See CPLR 5001(c) ("The amount of interest shall be computed by the clerk of the court, to the date the verdict was rendered . . . .").

## CONCLUSION RE PART II

Plaintiff's motion to, in effect, re-enter the judgment of June 18, 2004 is granted; his motion to have Sander listed as a judgment debtor in that judgment is denied; his application to add prejudgment interest at the rate of 9% per annum is granted but with the starting date being June 17, 1999, not May 19, 1999 as requested. The Clerk of the Court is hereby directed to enter judgment in favor of plaintiff against defendant in the amount of $106,150.00 plus interest from June 17, 1999 to June 18, 2004,

the date the verdict was rendered.  Upon entry of judgment, the Clerk of the Court is directed to close the case.

The above constitutes the decision and order of the Court.

SO ORDERED.

Dated: August 19, 2005
       Central Islip, New York

                                        /S/
                              DENIS R. HURLEY, U.S.D.J.